*008-2009-P-CPJS*

**DR. ADOLFO CALLEJAS**
**CASILLERO Nro. 827**
**Please be informed:**

[stamp:] October 27, 2010 [signature]

## THE JUDICIARY COUNCIL SITTING EN BANC

*Disciplinary Case No. 008-2009-P-CPJS*

**Decision Date**: Quito, October 27, 2010, 2:15 p.m.

**Date File Opened**: October 27, 2009 (*sua sponte*)

**Judge Writing the Court Opinion** (Art. 264 No. 18 COFJ): Dr. Oscar León Guerrón

**1.- BACKGROUND**.

*1.1. The Parties:*

**1.1.1** <u>*Complainant*</u>:

Dr. Adolfo Callejas, Legal Counsel for the CHEVRON Corporation (pp. 219-226); and Attorney Pablo Fajardo Mendoza, Esq., (pp. 565-567).

**1.1.2** <u>*Accused:*</u>

Dr. Juan Evangelista Núñez Sanabria, Judge of the Provincial Court of Sucumbíos.

*1.2. Reason for the case being heard by the Judicial Council sitting en banc.*

The restraining order filed by the Provincial Director of Sucumbíos, which was accepted by the Human Resources Administration Commission of the Judiciary Council (p. 1796).

**2.- COMPLAINT**

*2.1. Complaint Summary*

2.1.1. From the complaint filed by Dr. Adolfo Callejas, Legal Counsel for the CHEVRON Corporation (pp. 219-226).

2.1.1.1 As is public knowledge and as acknowledged by Dr. Juan Evangelista Núñez Sanabria himself, he participated in at least two meetings arranged by alleged Government and Alianza País party representatives for the purpose of assuring persons interested in obtaining environmental damage remediation contracts that the judgment would be rendered against Chevron, the alleged Government representatives having asserted that they could obtain remediation contracts arising from the orders made in the judgment, by means of a US$ 3 million bribe (including US$ 1 million for Judge Núñez).
2.1.1.2 According to audiovisual recordings that are public knowledge, at meetings attended by Judge Núñez, he said that he will order Chevron to pay thousands of dollars, part of which would

go directly to the Government, conduct that indicates that Dr. Núñez is acting, not in the interest of justice, but for what is presumably his own interest, thereby betraying not only the public trust and violating his duty to judge in an impartial and independent manner, but also violating express legal provisions and constitutional rights acknowledged by the Ecuadorian legal system.

2.1.1.3 Added to the above, which is already scandalous in itself, are the numerous public statements in which the Judge has openly shown himself to be biased against Chevron, an attitude that, moreover, is completely consistent with his participation in the aforementioned meetings;

2.1.1.4 The aforementioned facts are clear evidence that Judge Núñez had already decided the outcome of the case in question, even before the evidence requested and ordered in proceedings had been concluded; he had formed an opinion without the parties even having had the opportunity to present their respective reports or enter an appearance at the Courtroom Hearing and when, according to his own statements, Judge Núñez had not begun to review the over 150,000 pages in the case file; therefore, any claim of independence and impartiality on the part of the judge has been irreparably compromised, constituting a violation of his duties as an officer of the court;

2.1.1.5 Chevron has informed the "Prosecutor General of Ecuador and the Attorney General of Ecuador," that it had obtained audiovisual recordings of four meetings at which details were discussed of a plan to obtain bribes tied to the outcome of Case 002/2003, at that time being conducted by Dr. Juan Núñez in his capacity as Presiding Judge of the Provincial Court of Sucumbíos, recordings that were made between May and June 2009 by potential remediation contractors; the first and last meetings were held at the offices of Alianza País in Quito; recordings that show that the people who said that they represented the Government and the Alianza País party sought to assure potential contractors that Judge Núñez would enter a judgment against Chevron, even when the case was still in progress and, according to these recordings, the alleged representatives said that US$ 1 million would be delivered to Judge Núñez, US$ 1 million to the "Office of the President of Ecuador," and US$ 1 million to the plaintiffs; in addition, those recordings make it clear that "Chevron is going to lose the case ..." *There is no way, in other words, there is no logic in Chevron winning,"* and that they would give the Judge part of the requested bribe;

2.1.1.6 To show the alleged contractors that the outcome of the case was already predetermined, between the two meetings held at the Alianza País offices, the alleged government representatives took the potential contractors, on two occasions, to meetings with Judge Juan Núñez Sanabria; the first meeting was held at the offices of the Presiding Judge of the Provincial Court of Justice of Sucumbíos in Lago Agrio and the second at a hotel in Quito;

2.1.1.7 The recordings from these meetings show that Judge Núñez stated that: "1. The judgment will be rendered between October and November 2009; 2. Chevron will be found guilty and ordered to pay around US$ 27 billion, the amount recommended in an expert's opinion; 3. The judgment will determine which part of the money will be allocated to the Government; 4. The appeals process through the Provincial Court will be a mere formality; and, 5. The Government of the United States of America will tell Chevron: "you lost the lawsuit; pay up." Specifically, Judge Núñez had the following conversation with one of the potential contractors: "Judge Núñez: Do you have another question to ask me as judge? Potential Contractor: Ah, no, I, I know clearly, how it is, you say, Chevron is the guilty party. Judge Núñez: Yes, sir. Potential Contractor: And, the, the, the proceeding is in October or November of this year? Judge Núñez: "Yes, sir";

2.1.1.8 Following these meetings, one of the alleged government representatives, through his assistant, sent the potential contractors instructions for transferring the money requested, which included the number of an account held with a bank in the city of Galveston, Texas, in the United States; the contents of the recordings leads one to assume that Judge Núñez had a direct and substantial interest in declaring Chevron liable as a means of benefiting from the bribe requested allegedly in exchange for a judgment against Chevron and for awarding the environmental remediation contracts, to which it must be added that it has been made clear throughout proceedings that Judge Núñez does not maintain the necessary and indispensable judicial impartiality and independence as a judge in the case against Chevron, as clearly seen in the various interviews published in the various local and international press, in which said judge has made public statements consistent with his private statements mentioned above, thereby revealing his partiality in favor of the plaintiffs and his prejudgment of the outcome of the case; consistent with his biased statements, the Judge has denied petitions filed by Chevron on untenable grounds, thereby violating the rules of due process and depriving it of its right to a defense;

2.1.1.9 Finally, in view of the public scandal caused by the publication of the recordings, Judge Núñez, at the request of the Prosecutor General, attempted to quell the scandal, recusing himself from continuing to hear the case which, in the manner it was filed, should be rejected by the Acting Presiding Judge of the Provincial Court of Sucumbíos inasmuch as the grounds cited are erroneous and never legally founded; however, the Sole Division of said Court, on the grounds of constitutional provisions related to the violation of constitutional rights and of due process, removed Dr. Núñez from said proceedings, but he remains in the Judicial Branch "based on his recusal that it was not based on his improper conduct";

**2.1.2** From the complaint filed by Attorney Pablo Fajardo Mendoza, Esq. (pp. 565-567).
2.1.2.1 Since May 2003, when the Ecuadorian Justice System took over the case, despite the obstacles encountered, it has been conducted with absolute impartiality, transparency and objectivity by the judges charged with hearing the case; however, on August 31, 2009, the Chevron Corporation, through its spokespersons, presented a video in New York City to a considerable number of journalists, giving notice that it was immediately disseminated in a dozen countries, including Ecuador.
2.1.2.2 It is presumed that the video was recorded at four different times and, parts two and three show Dr. Juan Núñez Sanabria, who at the time was serving as Presiding Judge of the Provincial Court of Justice of Sucumbíos and, by legal mandate, he was the judge charged with conducting the suit that the Amazonian communities are pursuing against the Chevron Corporation.
2.1.2.3 In this video, Dr. Juan Núñez is seen holding meetings with people with ties to the defendant and other persons allegedly tied to the National Government, meetings shown to have occurred in May and June of 2009.
2.1.2.3 [sic] In some scenes in the video, one sees and hears the people appearing there, talking about money, the distribution of money, the assignment of environmental remediation contracts, among other things; 2.1.2.4 Despite the fact that in the video that Judge Núñez rejects any offer or hint of money, it is necessary to clarify all of the details of his conduct since as is public

knowledge, the aforementioned lawsuit had come to represent the image of the Administration of Justice in Ecuador internationally; therefore, they, as plaintiffs, have an interest in any acting judge having a clean record untarnished by any duly-proven acts of corruption.

2.1.2.5 No. 14 of Art. 103 of the Organic Code of the Judicial Branch (COFJ), prohibits "Receiving or meeting, in cases being heard, with either of the parties or its attorneys without having first notified the other party through the office of the court clerk at least forty-eight hours in advance"; according to the preliminary information known, it is possible that the judicial official may have met with employees of the opposing side without the knowledge of the plaintiffs.

2.1.2.6 They do not know whether the possible meetings that the Judge held with possible Chevron employees were held with the knowledge and awareness of who they were and what he was doing, or whether he was deceived into committing possible errors involuntarily.

2.1.2.7 With this background, he asks that a detailed investigation into the facts be conducted to clarify what the participation of Dr. Juan Núñez Sanabria was; why he participated in these events and what his intention was.

### *2.2. Definition of the alleged offense and sanction requested by the complainant.*

2.2.1 With respect to the complaint filed by Dr. Adolfo Callejas that the conduct of Dr. Juan Evangelista Núñez Sanabria violated the right to impartial justice expressly recognized by Art. 75 and by letter k) of Art. 76 de the Ecuadorian Constitution; that he is in violation of the express prohibitions set forth in No. 11 of Art. 103 and No. 1 of Art. 128 of the Organic Code of the Judicial Branch, which prohibit judges from expressing opinions, even privately, or from giving an opinion on the cases they are hearing; therefore, he asks that the facts alleged in the complaint be investigated and then, as appropriate, to sanction the accused public servant by removing him from his position.

2.2.2 The complaint made by Attorney Pablo Fajardo states that No. 14 of Art. 103 of the Organic Code of the Judicial Branch prohibits "Receiving or meeting, in cases being heard, with one of the parties or its attorneys without having first notified the other party through the office of the court clerk at least forty-eight hours in advance"; conduct he requests be investigated.

**3.- SUMMARY OF THE ANSWER OF THE JUDICIAL PUBLIC SERVANT UNDER INVESTIGATION.**

**3.1 Summary of the Answer.**

3.1.1 That he never acknowledged to the media that he had participated in at least two meetings arranged by alleged representatives of the Government and of the Alianza PAÍS party;

3.1.2 That they came to the Office of the Presiding Judge of the Provincial Court of Justice of Sucumbíos, where without authorization they proceeded to make recordings that have subsequently been edited in their entirety, thereby inducing and perhaps causing Dr. Juan Núñez to commit a violation of the law, something that never actually occurred;

3.1.3 Having been induced to meet "with Dr. Aulogelio Avila Cartagena, former Property Registrar for Lago Agrio and the subjects Diego Borja, who was acting as the translator for the

subject Wayne Hansen, where this latter party represented himself as a citizen who wished to participate in the judicial inspections as an expert in expert reports on environmental damage and therefore gave him a file, which he said demonstrated the strength of his knowledge about oil spills;

3.1.4 That they never proposed to him, hinted nor had he received any gift from anyone; that he had remained faithful to his duties as a public servant;

3.1.5 That he never indicated that he was going to render a judgment against Chevron or in favor of the plaintiffs, that "these are precisely the edits made in the video, for the purpose of creating great disruption and scandal, to the point that Chevron-Texaco aired the edited videos";

3.1.6 That all lawsuits have a quantity or amount claimed, as Ecuadorian laws so stipulate; it is the people from Chevron-Texaco themselves who have indicated that the amounts that they would have to pay for damages and compensation "are absurd figures," the amount of which" is equivalent to double the general budget of Ecuador and more than the Consortium's total income in 20 years of operations";

3.1.7 That Dr. Juan Núñez referred precisely to the information that said company mentions in its magazine published and distributed with "*El Comercio*";

3.1.8 That the complainant has exercised all rights of protection to which it is entitled under the Constitution; it has even attempted to exceed those rights, as he himself has indicated in various rulings issued within Case No. 002-2003;

3.1.9 That he has not violated the prohibitions set forth in Arts. 103 and 108, as the complainant claims, since he has not expressed any opinion privately nor advanced an opinion nor indicated any anticipated opinion in any case for which he was responsible for hearing;

3.1.10 That he has learned through the media that the Judge now hearing the case is being petitioned to declare the nullity of the proceedings conducted by Judge Juan Núñez, "The end justifies the means" and now there is an attempt being made to attain its objective, that being "to delay the judicial process";

3.1.11 The complainant has not specified within the text of the complaint what type of "minor, serious or gross" violation he has committed, that he has knowledge of Mr. Thomas F. Cuillen Jr., in the name of Chevron, having filed a complaint with the Office of the Attorney General without having entered an appearance to acknowledge his sign and signature; a complaint which includes a copy of the videos and transcripts, that were illegally obtained without his authorization, and that have been edited;

3.1.12 That the Judiciary Council directly launched an investigation, having filed the corresponding report having to do with the facts alleged in the complaint filed by Dr. Adolfo Callejas; therefore, he applies for joinder;

3.1.13 That despite the fact that the complainant has not indicated what type of violation has been committed, he expressly claims statutory limitation.

**3.2. *Express pronouncement of the [Judge] Under Investigation regarding the claims of the complainant.***

3.2.1. [The accused] expressly claims statutory limitation and asks that the complaint be dismissed, characterizing it as malicious and brazen because its only aim is to discredit him and therefore the Judicial Branch as well.

**4.- LEGAL SUPPORT FOR THE JURISDICTION OF THE JUDICIARY COUNCIL AND THE SATISFACTION OF LEGAL FORMALITIES.**

*4.1 Jurisdiction*

The Judiciary Council sitting *en banc* has jurisdiction to hear these disciplinary investigation proceedings in accordance with the provisions of Arts. 178 and 181 of the Constitution of the Republic of Ecuador; the Interpretative Decision of the Constitutional Court, published in Official Gazette No. 479 (Supplement) of December 2, 2008; Art. 264, No. 18, Article 119 paragraph two of the Organic Code of the Judicial Branch; the Decision issued by the Judiciary Council published in Official Gazette No. 493 of December 22, 2008; and the "Rules for Exercising Disciplinary Control of the Judicial Branch during the Transition Period," issued on March 24, 2009 and published in Official Gazette No. 598 of May 26, 2009.

*4.2. Compliance with the rules of due process.*
This administrative investigation has been conducted in strict observance of constitutional, legal and regulatory provisions, thereby allowing the right to a defense of the judicial public servant to be exercised, respecting the rules of due process as well as the provisions set forth in the Interpretative Decision issued by the Constitutional Court; the provisions of the Organic Code of the Judicial Branch; the decision issued by the Judiciary Council, published in Official Gazette No. 493 of December 22, 2008; and the "Rules for Exercising Disciplinary Control of the Judicial Branch during the Transition Period["]. There has been no breach of the substantial formality that influences or may influence the decision in the case; therefore, procedural validity is hereby declared.

**6. EVIDENCE IN THE FILE.**

*6.1. From the complainant:*

6.1 Pages 1-5: a certified copy of the power of attorney to act as legal representative granted by Chevron Corporation to the complainant.
6.2 Pages 6-27: clippings from issues of the newspaper *Hoy* from the city of Quito dated September 2, 3 and 4, 2009, containing transcripts of conversations "allegedly" held by Judge Juan Núñez, at the "alleged" meetings held with Chevron representatives.
6.3 Pages 30-173: copy of the transcript of the CD giving rise to this investigation, with the respective translation from English into Spanish.
6.4 Pages 175-217: newspaper articles with the proper translations, pertaining to the lawsuit giving rise to this investigation.
6.5 On pages 218 and 228, 3 CDS presented by Chevron Corporation with its complaint, as well as in evidence.
6.6 Pages 317-326: clippings from the country's various newspapers containing the statements given by Dr. Juan Núñez regarding the accusations made.
6.7 Pages 321-327: a transcription of the interview that Dr. Juan Núñez is said to have given outside the Office of the Prosecutor General.

6.8 Pages 343-351: the audio and video affidavit of the expert Dr. Durand R. Segault, who is said to have studied the recordings that are the subject of this file.

6.9 Pages 358-361: the record of the deposition given by Dr. Juan Núñez Sanabria to the Provincial Director of the Judiciary Council of Sucumbíos according to the list included between pp. 341 and 343.

6.10 Pages 370-374: the translation of the affidavit given by Diego Fernando Borja Sánchez (pp. 332-336).

6.11 Pages 1027-1143: the technical study of the CD that is the subject hereof, carried out by the expert Audio Engineer Hugo Rekalde, with the corresponding transcript of the contents, of the four recordings that said CD contains, a report that concludes that *"Each recording is unified, coordinated and cohesive, the contents of which are unquestionable , since when the CD-R was subjected to the decibel counter under the Electron Microscope, where the dispersion of particles that had and had not entered the magnetic field of the phonocapture head of the recording device could be observed, the result obtained was a recording constant since the frequency is continuous on each. No cuts, additions, separations, splices, edits, erasures or sound editing of any kind that would alter or change the contents recorded on the CD-R were found."*

*6.2. By the Accused:*

6.2.1 Pages 234-237: copies of documents submitted by the complainant Dr. Adolfo Callejas, in the Case that is the subject of this [*sic*] hereof.

6.2.2 Pages 238-240: COPY of the complaint filed with the Office of the Prosecutor General by Mr. Thomas F. Cullen.

6.2.3 Pages 241-290: ordinary copies of miscellaneous documentation in English.

6.2.4 Pages 291-300: a copy of the magazine published by Chevron, concerning Texaco and Ecuador in the petroleum industry in Amazonia, one article of which deals with the conflict that is the subject of the lawsuit forming the basis for this administrative investigation and, specifically, regarding the conduct of the appointed expert.

6.2.5. Ordinary copy of the official letter whereby the Office of the Prosecutor General of Ecuador notified Dr. Juan Núñez to appear to give his testimony regarding the complaint filed by Mr. Thomas F. Cullen.

6.3.6 [sic] Pages 590-593 and 596-607: copies of various rulings rendered by Dr. Juan Núñez in the lawsuit that is the subject of this investigation, including that of the third of [sic], 2009, containing the recusal given to the Subrogating Presiding Judge of the Provincial Court of Sucumbíos.

6.3.7 Pages 1313-1727: a transcript of various conversations said to have been held between Santiago Escobar and Diego Borja via "chat," as well as a transcript and translation of the contents of the videos, documents that have been filed by the complainant Attorney Pablo Fajardo Mendoza, Esq.

6.2.7 [sic] Pages 1807 and 1808: copy of the free and voluntary statement made by Mr. Santiago Ernesto Escobar Escobar in Preliminary Investigation No. 107-2009-DRR opened in the Office of the Prosecutor General of Ecuador, which is related to the transcript appearing on pp. 1313-1727. (Document submitted after the evidentiary period ended.)

**7. ASSESSMENT OF THE EVIDENCE**

7.1 From the text of the CD transcript giving rise to this investigation, the contents of which according to the appointed expert Engineer Hugo Rekalde have not been altered or modified in any way, it may be inferred that in point of fact, Dr. Núñez Sanabria met on two occasions with

CERT. GEOTEXT VER: JD

Diego Borja, Almeida and Wayne Hansen; once at the offices of the Provincial Court of Justice of Sucumbíos and the other in the city of Quito, with Aulogelio Avila Cartagena, former Property Registrar for Lago Agrio serving as liaison for them who, as indicated, was a friend of the party under investigation, as said party expressly admits, even in his interviews given to the media (pp. 317-320), when he states that, at those meetings, said foreign citizen gave him a file because he wished to participate in the judicial inspections as an expert in the expert reports on environmental damage.

7.2 At these meetings, pursuant to the request made, the judge under investigation proceeded to furnish information about the case, explaining the purpose of the lawsuit and what his responsibilities were in acting as an operator of justice, giving assurance that he would render the judgment in late 2009 and that, in the case of an appeal, the Court would decide the case within a maximum of sixty days; he also indicates the points involved in remediation, making it clear that "it is necessary to remediate the earth[,] it is necessary to remediate a pile of issues, the water, the rivers that are quite affected" (recording 3, pp. 1095-1115); in recording 4, he explains to his interlocutors the items for which a person losing an environmental remediation lawsuit would be responsible for paying; that the complaint claims twenty-seven billion, more or less, that he likewise cannot indicate at that time who will win or lose the lawsuit.

7.3 As stated above, it is clearly found that Dr. Juan Núñez Sanabria, in his capacity as Presiding Judge of the Provincial Court of Justice of Sucumbíos, violated the legal prohibition set forth in No. 11 of Art. 103 of the Organic Code of the Judicial Branch, established for all judicial servants, to wit: "11. *Expressing his opinion, even* privately, or advancing it in the case that he is to hear*,"* in accordance with the provisions of No. 1 of Art. 128 *ibid.*, which stipulates, as a specific prohibition for judges, "1. Expressing an early opinion in a case that they may be judging or must judge"; thereby committing the "gross" violation described in No. 16 of Art. 109 of the cited Code, to wit: *"Disclosing information about investigative acts that, due to their nature, may illegitimately favor or injure one of the parties."*

**8. RE-OFFENCE (Art. 107, 108, 110 of the COFJ)**

There has been no recurrence of the same offences.

**9. LEGAL GROUNDS FOR THIS JUDGMENT**

9.1 In accordance with the provisions of the second subparagraph of Art. 5 of the Rules for Exercising Disciplinary Control of the Judicial Branch during the Transition Period, *"The purpose of the administrative procedure is to determine whether there has been conduct considered to be a breach of discipline, to establish the circumstances of time, mode and location in which the administrative liability of the party under investigation was incurred and the severity for the purpose of imposing the corresponding penalty."*

9.2 In this case, the evidence in the case file contributes sufficient elements that show that the party under investigation, Dr. Juan Núñez Sanabria, in his capacity as Presiding Judge of the Provincial Court of Justice of Sucumbíos, has violated the prohibitions set forth in Art. 103 No. 11 and Art. 128 No. 1 of the Organic Code of the Judicial Branch by expressing his early opinion in the case he was hearing and was obligated to judge, thereby also disclosing information about

acts under investigation in that case, thereby committing the gross breach described and sanctioned by removal in No. 16 of Art. 109 of said body of law.

**10. DECISION.**

Therefore, based on the considerations presented, **THE JUDICIARY COUNCIL SITTING *EN BANC*** hereby issues the following Decision:

*10.1 To accept* the complaints filed by Dr. Adolfo Callejas, Legal Counsel for the CHEVRON Corporation, and by Attorney Pablo Fajardo Mendoza.
*10.2 To remove* Dr. Juan Evangelista Núñez Sanabria from the position of Judge of the Provincial Court of Justice of Sucumbíos, advising him of the provisions of Art. 238 of the Criminal Code.
*10.3* To serve notice of this decision upon the parties, the National Personnel and Finance Directors, the Provincial Director of Sucumbíos and the Coordinator of the Disciplinary Control Unit for the pertinent purposes.
*10.3* The clerk of the Disciplinary Control Unit acts.

[signature]
Dr. Benjamín Cevallos Solórzano
**PRESIDING JUDGE**

[watermark:] Judicial Branch of Ecuador

[signature]
Dr. Hermán Jaramillo Ordóñez
**MEMBER**

[signature]
Dr. Ulpiano Salazar Ochoa
**MEMBER**

[signature]
Dr. Homero Tinoco Matamoros
**MEMBER**

[signature]
Dr. Marco Tulio Cordero Zamora
**MEMBER**

[signature]
Dr. Oswaldo Domínguez Recalde
**MEMBER**

[signature]
Dr. Germán Vázquez Galarza
**MEMBER**
**(IN OPPOSITION)**

[signature]
Dr. Oscar León Guerren
**MEMBER**

[signature]
Dr. Gustavo Donoso Mena
**CLERK IN CHARGE**

I hereby state for the purposes of the Law. [signature] [stamp:] JUDICIARY COUNCIL, OFFICE OF THE CLERK, DISCIPLINARY CONTROL UNIT

Dr. Belén Montalvo Bautista
**CLERK FOR THE DISCIPLINARY CONTROL UNIT (Acting)**
**JUDICIARY COUNCIL**

CERT. GEOTEXT VER: JD



**GEOTEXT**
Translations, Inc.

| | |
|---|---|
| STATE OF NEW YORK ) | |
| ESTADO DE NUEVA YORK ) | ss |
| ) | |
| COUNTY OF NEW YORK ) | |
| CONDADO DE NUEVA YORK ) | |

## CERTIFICATION/ CERTIFICACIÓN

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from English into Spanish of the attached document.

Por la presente certifico que la traducción adjunta de inglés a español es, a mi leal saber y entender, traducción fiel y exacta del documento adjunto.

_[signature]_

Evan Finch, Senior Project Manager/
Gerente de proyectos senior
Geotext Translations, Inc.

Sworn to and subscribed before me/Suscrito y jurado ante mí

this 3rd day of November, 20 10.

a los 3rd días del mes de Novembr de 20 10.

_[signature]_

ABIGAIL SIMONE
NOTARY PUBLIC-STATE OF NEW YORK
No. 01SI6195558
Qualified in New York County
My Commission Expires October 27, 2012

New York  259 West 30th Street, 17th Floor, New York, NY 10001, U.S.A. tel +1.212.631.7432 fax +1.212.631.7778
San Francisco  220 Montgomery Street Ste. 438, San Francisco CA 94104 U.S.A tel +1.415.576.9500 fax +1.415.520.0525
Washington  1025 Connecticut Avenue, Suite 1000, Washington, DC 20036, U.S.A. Tel +1.202.828.1267 Fax +1.202.828.1271
London  8-11 St. John's Lane, London EC1M 4BF, United Kingdom Tel +44.20.7553.4100 Fax+44.20.7990.9909
Paris  75 Boulevard Haussmann, F- 75008 Paris, France tel +33.1.42.68.51.47 fax +33.1.77.72.90.25
Hong Kong  20th Floor, Central Tower, 28 Queen's Road, Central, Hong Kong tel +852.2159.9143 fax +852.3010.0082
translations@geotext.com | www.geotext.com

SEÑOR DOCTOR
ADOLFO CALLEJAS
CASILLERO Nro. 827
Se le hace saber:

1

*008-2009-P-CPJS*

## EL PLENO DEL CONSEJO DE LA JUDICATURA

*Expediente Disciplinario No. 008-2009-P-CPJS*

**Fecha de Resolución**: Quito, a 27 de Octubre del 2010, las 14h15

**Fecha de inicio del Expediente:** 27 de octubre del 2009 (De oficio)

**Vocal Ponente (Art. 264 No.18 COFJ):** Dr. Oscar León Guerrón

### 1.- ANTECEDENTES.

*1.1. Las partes:*

1.1.1 <u>Denunciante:</u>

Dr. Adolfo Callejas, Procurador Judicial de la Compañía CHEVRON (fs. 219 a 226); y Abg. Pablo Fajardo Mendoza, (fs. 565 a 567).

1.1.2 <u>Denunciado:</u>

Dr. Juan Evangelista Núñez Sanabria, Juez de la Corte Provincial de Sucumbíos.

*1.2. Motivo por el que conoce el expediente el Pleno del Consejo de la Judicatura.*

En virtud de la inhibición presentada por el Director Provincial de Sucumbíos y que fuera aceptada por la Comisión de Administración de Recursos Humanos del Consejo de la Judicatura (fs. 1796).

### 2.- DENUNCIA

*2.1. Resumen de la Denuncia*

2.1.1. De la presentada por el Dr. Adolfo Callejas, Procurador Judicial de la Compañía CHEVRON (fs. 219 a 226).

2.1.1.1 Que como es de conocimiento público y como así lo ha reconocido el propio Dr. Juan Evangelista Núñez Sanabria, éste participó en al menos dos reuniones concertadas por supuestos representantes del Gobierno y del partido Alianza País, con el objeto de asegurar a personas interesadas en obtener contratos de remediación por daños ambientales, que la sentencia sería pronunciada en contra de Chevron, habiendo afirmado los supuestos representantes del Gobierno, que podrían obtener contratos de remediación derivados de lo ordenado en sentencia, a través de un soborno de USD $ 3 millones (incluyendo US$ 1 millón para el Juez Núñez).

2.1.1.2 Que según consta en grabaciones audiovisuales que son de público

2

*008-2009-P-CPJS*

directamente al Gobierno, intervención que denota que el Dr. Núñez está actuando no en interés de la justicia, sino por un presunto interés propio, traicionando no solo la confianza pública y violado su deber de juzgar imparcial e independientemente, sino quebrantando expresas disposiciones legales y derechos constitucionales reconocidos por el ordenamiento jurídico ecuatoriano.

2.1.1.3 Que a lo anterior ya por sí escandaloso, se suman las numerosas declaraciones públicas en las que el Juez se ha mostrado abiertamente parcializado en contra de Chevron, actitud que por otra parte, es completamente coherente con su participación en las reuniones ya aludidas;

2.1.1.4 Que los hechos referidos son la muestra más clara de que el Juez Núñez, ya ha decidido el resultado del juicio en referencia, aún antes de que se haya terminado la actuación de las pruebas pedidas y ordenadas; ha formado criterio sin que las partes hayan tenido aún la oportunidad de presentar sus respectivos informes en derecho o de comparecer en la Audiencia de Estrados, y cuando según sus propias declaraciones, el Juez Núñez no había empezado a revisar las más de 150.000 fojas que contiene el expediente, por lo que, cualquier pretensión de independencia e imparcialidad del juez ha sido irremediablemente comprometida, lo que constituye una infracción a sus deberes como funcionario judicial;

2.1.1.5 Que Chevron ha informado a los señores "Fiscal General de la Nación y Procurador General del Estado", que ha obtenido grabaciones audiovisuales de cuatro reuniones en las que se discutieron detalles de un plan para obtener sobornos ligados al resultado del juicio 002/2003, entonces a cargo del Dr. Juan Núñez en su calidad de Presidente de la Corte Provincial de Sucumbíos, grabaciones que han sido hechas entre mayo y junio del 2009, por potenciales contratistas de remediación; que la primera y última reunión se llevaron a cabo en las oficinas de Alianza País en Quito; grabaciones que revelan, que las personas que dicen representar al Gobierno y al partido Alianza País, buscaron asegurar a los potenciales contratistas que el Juez Núñez emitiría sentencia en contra de Chevron, aún cuando el juicio se encuentra aún en trámite; y según dichas grabaciones, los supuestos representantes dijeron, que US$ 1 millón sería entregado al juez Núñez, US$ 1 millón a la "Presidencia de la República", y US$ 1 millón a los demandantes; además, que en esas grabaciones se deja en claro, que "Chevron va a perder el caso..."*No hay manera, en otras palabras, no hay lógica para que Chevron gane*", y que ellos le darían al Juez parte del soborno solicitado;

2.1.1.6 Que para demostrar a los supuestos contratistas que el resultado del juicio habría ya sido predeterminado, entre las dos reuniones celebradas en las oficinas de Alianza País, los supuestos representantes gubernamentales, llevaron en dos ocasiones a los potenciales contratistas a entrevistarse con el Juez doctor Juan Núñez Sanabria; la primera reunión se llevó a efecto en las oficinas de la Presidencia de la Corte Provincial de Justicia de Sucumbíos en Lago Agrio y la segunda en un hotel en Quito;

2.1.1.7 Que en las grabaciones de estas reuniones, consta que el Juez Núñez afirmó que: "1. La sentencia se dictará entre octubre y noviembre de 2009; 2. Chevron será declarado culpable y se le impondrá el pago de alrededor de US $ 27 mil millones, cuantía recomendada en la opinión de un perito; 3. La sentencia determinará qué parte del dinero se asignaría al Gobierno; 4. El proceso de apelación ante la Corte Provincial será una mera formalidad; y, 5. El Gobierno de los Estados Unidos de América le dirá a Chevron: "perdiste el juicio, paga". Que específicamente el Juez Núñez tiene la siguiente conversación con uno de los potenciales contratistas: " Juez Núñez: Alguna otra pregunta para mí como Juez?. Potencial Contratista: Ah, no, yo, yo se claramente como es, usted dice, Chevron es el culpable. Juez Núñez: Sí, señor. Potencial Contratista: Y, el, el, el acto es ¿octubre o noviembre de este año?. Juez Núñez: Sí, señor";

008-2009-P-CPJS

2.1.1.8 Que a continuación de estas reuniones, uno de los supuestos representantes gubernamentales a través de su asistente, les envió a los potenciales contratistas instrucciones para la transferencia del dinero solicitado, las que incluían un número de cuenta en un banco de la ciudad de Galveston, Estado de Texas en los Estados Unidos de Norteamérica; que del contenido de las grabaciones hace suponer, que el Juez Núñez tendría interés directo y sustancial en declarar responsable a Chevron como medio para beneficiarse del soborno solicitado supuestamente a cambio de una sentencia en contra de Chevron y el otorgamiento de los contratos de remediación ambiental, a lo que debe sumarse, que ha quedado patente a lo largo de todo el proceso, que el Juez Núñez no mantiene la necesaria e indispensable imparcialidad e independencia judicial como Juez en el Juicio contra Chevron, lo que se desprende con claridad de las diferentes entrevistas publicadas en varios medios de prensa locales e internacionales, en los que dicho Juez, ha hecho declaraciones públicas que guardan consistencia con sus declaraciones privadas antes aludidas, configurando su parcialidad a favor de los demandantes y su prejuzgamiento del resultado del caso; consistente con sus parcializadas declaraciones, el Juez ha negado pedidos de Chevron por motivos que no son sustentables, violando las reglas del debido proceso y privándole de su derecho a la defensa;

2.1.1.9 Finalmente, ante el escándalo público ocasionado por la publicación de las grabaciones, el Juez Núñez, a pedido del Fiscal General, pretendió acallar el escándalo, excusándose de seguir en el conocimiento de la causa, la misma que, en la forma que se presentó debía ser rechazada por el Presidente Subrogante de la Corte Provincial de Sucumbíos, por cuanto la causal invocada es errónea y nunca fue fundamentada en forma legal, pero que la Unica Sala de dicha Corte, fundamentada en normas constitucionales relativas a la violación de las garantías constitucionales y del debido proceso, apartó al Dr. Núñez de dicho proceso, pero continúa dentro de la Función Judicial "basado en su excusa, que no se fundamentó en su indebido comportamiento";

**2.1.2** De la presentada por el Abg. Pablo Fajardo Mendoza, (fs. 565 a 567).
2.1.2.1 Que desde el mes de mayo del 2003, en que el juicio se encuentra a cargo de la Justicia Ecuatoriana, pese a los obstáculos sufridos ha sido llevado con absoluta imparcialidad, transparencia y objetividad por parte de los jueces que han estado a cargo del conocimiento de la causa; sin embargo, el 31 de agosto del 2009, la Corporación Chevron a través de sus voceros ha presentado un video en la ciudad de New York ante un número considerable de periodistas, notifica que se difundió inmediatamente en decena de países, entre ellos en el Ecuador.
2.1.2.2 Que se presume que el video fue grabado en cuatro momentos distintos y en las partes dos y tres, se observa al Dr. Juan Núñez Sanabria, quien a la fecha se desempeñaba como Presidente de la Corte Provincial de Justicia de Sucumbíos y por mandato legal, es el juez encargado de la sustanciación del juicio que siguen las comunidades amazónicas contra la compañía Chevron Corporation.
2.1.2.3 Que en dicho video se observa que el Dr. Juan Núñez mantuvo reuniones con personas vinculadas a la demandada y otras personas supuestamente vinculadas al Gobierno Nacional, reuniones que se indica ocurrieron en los meses de mayo y junio del 2009.
2.1.2.3 Que en algunas escenas del video se observa y escucha a las personas que allí aparecen, hablando de dinero, de repartición de dinero, de asignación de contratos de remediación ambiental entre otras cosas; 2.1.2.4 Que pese a que se observa en el video que el Juez Núñez rechaza cualquier oferta o insinuación de dinero, se necesita esclarecer todos los detalles sobre su actuación, puesto



4

*008-2009-P-CPJS*

que como es de conocimiento público, el referido juicio, se ha convertido en el juicio que representa la imagen de la administración de Justicia del Ecuador en el contexto internacional, por lo que están interesados como demandantes, que cualquier juez que actúe tenga una hoja de vida limpia y no esté manchada con actos de corrupción que hayan sido debidamente comprobados.

2.1.2.5 Que el numeral 14 del Art. 103 del Código Orgánico de la Función Judicial, prohíbe " Recibir o reunirse, en las causas que esté conociendo, a una de las partes o a sus abogados, sin que haya sido notificada previamente la otra por medio de la secretaría de la judicatura, con una antelación no menor a cuarenta y ocho horas"; según la información preliminar que conocen, es posible que el funcionario judicial se haya reunido con funcionarios de la contraparte sin que conozcan los demandantes.

2.1.2.6 Que no conocen si las posibles reuniones que mantuvo el Juez con posibles funcionarios de Chevron, lo hizo con conocimiento y conciencia de quienes eran ellos y lo que estaba haciendo, o si a su vez fue inducido a través de engaños a cometer posibles errores en forma involuntaria.

2.1.2.7 Con estos antecedentes, solicita se realice una prolija investigación de los hechos, aclarándose cuál fue la participación del Dr. Juan Núñez Sanabria; ¿por qué? participó en esos hechos, y ¿cuál era el fin del mencionado funcionario?

### 2.2. *Tipificación de la falta imputada y sanción que solicita el denunciante.*

2.2.1 Respecto de la denuncia formulada por el Dr. Adolfo Callejas, que la actuación del doctor Juan Evangelista Núñez Sanabria, viola el derecho a una justicia imparcial, expresamente reconocido por el Art. 75 y por la letra k) del Art. 76 de las Constitución de la República; que viola las expresas prohibiciones constantes en los numerales 11 del Art. 103 y 1 del Art. 128 del Código Orgánico de la Función Judicial, que prohíben a los jueces expresar opiniones aún privadamente, o anticipar criterio en las causas que estuvieren en su conocimiento, por lo que solicita se proceda a investigar los hechos denunciados y luego a sancionar, si fuere del caso, al servidor denunciado, con la *remoción* de su cargo.

2.2.2 Respecto a la denuncia del Ab. Pablo Fajardo, indica, que el Numeral 14 del Art. 103 del Código Orgánico de la Función Judicial, prohíbe "Recibir o reunirse, en las causas que esté conociendo, a una de las partes o a sus abogados, sin que haya sido notificada previamente la otra por medio de la secretaría de la judicatura, con una antelación no menor a cuarenta y ocho horas"; actuación que pide sea investigada.

### 3.- RESUMEN DE LA CONTESTACION DEL SERVIDOR JUDICIAL SUMARIADO.

#### 3.1 Resumen de Contestación.

3.1.1 Que nunca ha reconocido ante los medios de comunicación, que ha participado en al menos dos reuniones concertadas por supuestos representantes del Gobierno y del partido Alianza PAÍS;

3.1.2 Que han acudido hasta las oficinas de la Presidencia de la Corte Provincial de Justicia de Sucumbíos, donde sin su autorización han procedido a realizar grabaciones que posteriormente han sido editadas en su totalidad, provocando e induciendo a que el doctor Juan Núñez cometa quizá un acto reñido con la ley, situación que nunca ha ocurrido;

3.1.3 Que fue inducido a reunirse "con el doctor Aulogelio Avila Cartagena, ex Registrador de la Propiedad de Lago Agrio y los sujetos Diego Borja, que fungía

5

008-2009-P-CPJS

de traductor del sujeto Wayne Hansen, donde este último se presentó como un ciudadano que quería intervenir en las inspecciones judiciales como perito en experticias por daños ambientales, y fue así como le entregó una carpeta, con la cual decía demostrar solidez en sus conocimientos sobre derrames petroleros;

3.1.4 Que nunca le han propuesto, insinuado, ni ha recibido dádiva de nadie; que se ha mantenido incólume en sus funciones que ha tenido como empleado público;

3.1.5 Que jamás ha manifestado que va a dictar una sentencia en contra de Chevron ni a favor de los demandantes, que "precisamente esas son las ediciones que han realizado en el video, con el fin de crear grandes trastornos y escándalos, a tal punto que Chevron-Texaco pusieron al aire los videos editados";

3.1.6 Que toda demanda tiene una cuantía o monto que se reclama, así lo obliga a señalar las leyes ecuatorianas, son los propios personeros de Chevron-Texaco, los que han señalado que los valores que tendrían que pagar por daños e indemnizaciones "son cifras absurdas", cuyo monto " es el equivalente al doble del presupuesto general del Ecuador y más del total de ingresos que percibió el Consorcio en 20 años de operaciones";

3.1.7 Que el Dr. Juan Núñez se ha referido precisamente a los datos que menciona dicha compañía en su revista publicada y distribuida junto a "EL Comercio";

3.1.8 Que el denunciante ha ejercido todos los derechos de protección que le asigna la Constitución, incluso ha pretendido rebasar esos derechos, tal como lo ha manifestado el compareciente en diferentes providencias dictadas dentro de la causa No. 002-2003;

3.1.9 Que no ha incurrido en las prohibiciones señaladas en los Arts. 103 y 108, como asegura el denunciante, puesto que no ha expresado ninguna opinión privadamente ni ha anticipado criterio, ni ha manifestado ninguna opinión anticipada en causa alguna, de las que le ha correspondido conocer;

3.1.10 Que ha conocido por los medios de comunicación que se está solicitando al Juez que ahora conoce la causa, declare la nulidad de las actuaciones del Juez Juan Núñez, "El fin justifica los medios" y hoy se pretende aplicar su objetivo, esto es, "dilatar el proceso judicial";

3.1.11 Que el denunciante no ha determinado en el texto de la denuncia que tipo de infracción "leve, grave o gravísima", ha cometido; además, que tiene conocimiento que el señor Thomas F. Cuillen Jr. a nombre de Chevron, ha presentado una denuncia en la Fiscalía General, sin que haya comparecido a reconocer sus firma y rúbrica; denuncia a la que se ha adjuntado copia de los videos y transcripciones obtenidas de forma ilegal, sin su autorización y que han sido editadas;

3.1.12 Que el Consejo de la Judicatura inició directamente una investigación, habiendo presentado el informe correspondiente, y que tiene relación con los hechos denunciados por el Dr. Adolfo Callejas, por lo que solicita la acumulación;

3.1.13 Que pese a que el denunciante no ha señalado que clase de infracción ha cometido, alega expresamente la prescripción.

### 3.2. Pronunciamiento expreso del Sumariado sobre las pretensiones del denunciante.

3.2.1 Alega expresamente la prescripción y solicita se rechace la denuncia calificándola de maliciosa y temeraria porque lo único que persigue es desprestigiarle y por ende también a la Función Judicial.

6

008-2009-P-CPJS

## 4.- SUSTENTO LEGAL QUE RESPALDA LA COMPETENCIA POR PARTE DEL CONSEJO DE LA JUDICATURA Y EL CUMPLIMIENTO DE FORMALIDADES LEGALES.

### 4.1 Competencia

El Pleno del Consejo de la Judicatura es competente para conocer el presente sumario disciplinario, de conformidad con los Arts. 178 y 181 de la Constitución de la República del Ecuador; la Sentencia Interpretativa de la Corte Constitucional, publicada en el Registro Oficial No. 479 (Suplemento), de 2 de diciembre del 2008; los Arts. 264, Numeral 18, 119 inciso segundo del Código Orgánico de la Función Judicial; la Resolución expedida por el Consejo de la Judicatura, publicada en el Registro Oficial No. 493 de 22 de diciembre del 2008; y, las "Normas para el Ejercicio de Control Disciplinario de la Función Judicial, para el Período de Transición", expedidas el 24 de marzo del 2009 y publicadas en el Registro Oficial No. 598 de 26 de mayo del 2009.

### 4.2. Cumplimiento de las reglas del debido proceso.

El presente sumario administrativo, ha sido tramitado con estricta observancia de las normas constitucionales, legales y reglamentarias, permitiendo el ejercicio del derecho de defensa del servidor judicial, respetando las reglas del debido proceso, así como de las disposiciones constantes en la Sentencia Interpretativa dictada por la Corte Constitucional; las disposiciones del Código Orgánico de la Función Judicial; la resolución expedida por el Consejo de la Judicatura, publicada en el Registro Oficial No. 493 de 22 de diciembre del 2008; y, las "Normas para el Ejercicio de Control Disciplinario de la Función Judicial, para el Período de Transición. No se ha incurrido en ninguna violación de solemnidad sustancial que influya o pueda influir en la decisión de la causa, por lo que se declara la validez procesal.

## 6. PRUEBAS QUE OBRAN EN EL EXPEDIENTE.

### 6.1. Por parte del denunciante:

6.1 De fojas 1 a 5 copia certificada de la Procuración Judicial otorgada por Chevron Corporation al denunciante.

6.2 De fs. 6 a 27, recortes de de publicaciones del periódico Hoy de la ciudad de Quito, de 2, 3 y 4 de septiembre del 2009, en el que constan reproducidos los diálogos mantenidos "supuestamente" por el Juez Juan Núñez, en las "supuestas" reuniones celebradas con personeros de Chevron.

6.3 De fs. 30 a 173, copia del texto transcripciones con la respectiva traducción del idioma inglés al español, del CD que motiva este sumario. 6.4 De fs. 175 a 217, artículos periodísticos con las debidas traducciones, relacionados con el juicio que motiva este sumario.

6.5 A fs. 218 y 228, 3 CDS presentados por Chevron Corporation con su denuncia, así como en la prueba.

6.6 De fs. 317 a 326, recortes de diferentes diarios del país, que contienen las declaraciones dadas por el Dr. Juan Núñez, con respecto a las acusaciones formuladas.

6.7 A fs. 321 a 327, una trascripción de la entrevista que se dice ha dado el Dr. Juan Núñez en los exteriores de la Fiscalía.

7

008-2009-P-CPJS

6.8 A fs. 343 a 351, la declaración juramentada del perito en audio y video Dr. Durand R. Begault, quien se indica, analizó las grabaciones materia de este expediente.

6.9 A fs. 358 a 361, el acta de confesión judicial rendida por el Dr. Juan Núñez Sanabria, ante el Director Provincial del Consejo de la Judicatura de Sucumbíos, al tenor del pliego incorporado entre fs. 341 y 343.

6.10 A fs. 370 a 374, la traducción de la declaración con juramento rendida por Diego Fernando Borja Sánchez (fs-332 a 336).

6.11 De fs. 1027 a 1143, el estudio técnico del CD materia del este sumario, realizado por el perito Ing. En Audio Hugo Rekalde, con la correspondiente transcripción del contenido, de las cuatro grabaciones que contiene dicho CD, informe en el que concluye, que " *Cada grabación, presenta unidad, coordinación e ilación sin que se pueda dudar de su contenido, ya que al ser sometido el CD-R al conteo decibèlico en el Microscopio Electrónico, donde se puede observar la dispersión de partículas que han entrado y las que no lo han hecho en el campo magnético de la cabeza fonocaptora del aparato grabador utilizado, se obtiene como resultado una constante de grabación, ya que la frecuencia es continua en cada una. No se registran cortes, adiciones, separaciones, empates, montajes, borrados o sonomontajes de ninguna naturaleza, que altere o varíe el contenido grabado en el CD-R*".

### 6.2. Por parte del Denunciado:

6.2.1 De fs. 234 a 237, copias de escritos presentados por el denunciante Dr. Adolfo callejas, dentro del Juicio materia de esta de este expediente.

6.2.2 De fs. 238 a 240, COPIA de la denuncia presentada en la Fiscalía General por parte del señor Thomas F. Cullen.

6.2.3 De fs. 241 a 290, copias simples de variada documentación en idioma inglés.

6.2.4 De fs. 291 a 300, un ejemplar de la revista publicada por Chevron, referente a Texaco y el Ecuador en la actividad petrolera en la Amazonía, en uno de cuyos artículos trata sobre el conflicto materia del juicio base de este sumario administrativo, y específicamente, sobre la actuación del perito designado.

6.2.5. Copia simple del oficio por el cual la Fiscalía General del Estado, notifica al Dr. Juan Núñez, para que concurra a rendir su versión sobre la denuncia presentada por el señor Thomas F. Cullen.

6.3.6 De fs. 590 a 593 y 596 a 607 copias de varias providencias dictadas por el Dr. Juan Núñez, dentro del juicio materia de este sumario, incluida la de 3 de del 2009, por la cual presenta la excusa ante el Presidente Subrogante de la Corte Provincial de Sucumbíos.

6.3.7 De fs. 1313 a 1727 una trascripción de varias conversaciones que se dice fueron realizadas entre Santiago Escobar y Diego Borja vía "chat", así como una transcripción y traducción del contenido de los videos, documentos que han sido presentados por el denunciante Ab. Pablo Fajardo Mendoza.

6.2.7 A fs. 1807 y 1808, copia de la versión libre y voluntaria rendida por el señor Santiago Ernesto Escobar Escobar, dentro de la Indagación Previa No. 107-2009-DRR iniciada en la Fiscalía General del Estado, que tiene relación con la transcripción constante de fs. 1313 a 1727. ( Documento que se ha presentado una vez concluido el término probatorio).

### 7. VALORACIÓN DE LAS PRUEBAS

7.1 Del texto de la trascripción del CD que motiva este sumario, y que según el perito designado Ing. Hugo Rekalde, no ha sufrido alteración o variación de su contenido, se desprende que efectivamente el doctor Juan Núñez Sanabria, se



reunió en dos ocasiones, con Diego Borja, Almeida y Wayne Hansen; una, en las oficinas de la Corte Provincial de Justicia de Sucumbíos y otra, en la ciudad de Quito, sirviendo como nexo para las mismas, Aulogelio Avila Cartagena, ex Registrador de la Propiedad de Lago Agrio, que según se indica, era amigo del sumariado, como expresamente lo admite éste, inclusive en sus entrevistas dadas a los medios de comunicación ( fs. 317 a 320), cuando afirma, que en esas reuniones, dicho ciudadano extranjero, le presentó una carpeta porque quería intervenir en las inspecciones judiciales como perito en experticias por daños ambientales.

7.2 En dichas reuniones, ante el requerimiento formulado, el juez sumariado, procedió a entregar información del juicio, explicando el objetivo del juicio y lo que le corresponde a él actuar como operador de justicia, asegurando que la sentencia la dictará a finales del 2009 y que en caso de apelación, la Corte resolverá máximo en sesenta días; indica también los puntos que comprende la remediación, aclarando que "hay que remediar la tierra hay que remediar un montón de cuestiones, el agua, los ríos que están bastante afectados" ( grabación 3 Fs. 1095 a 1115); en la grabación 4, explica a sus interlocutores, los rubros que según la ley corresponde pagar a quien pierde un juicio de remediación ambiental; que en la demanda se reclama veinte y siete mil millones, pero que a lo mejor es más o menos, que tampoco puede indicar en ese momento quien va a ganar o perder el juicio.

7.3 Por lo indicado en los numerales anteriores, se determina claramente, que el Dr. Juan Núñez Sanabria, en su calidad de Juez Presidente de la Corte Provincial de Justicia de Sucumbíos, incurrió en la prohibición legal del numeral 11 del art. 103 del Código Orgánico de la Función Judicial, establecida para todas las servidoras y servidores judiciales, esto es "*11. Expresar su opinión, aun privadamente, o anticiparla en la causa que estuviere en su conocimiento*", en concordancia con lo dispuesto en el numeral 1 del Art. 128 ibidem, que determina como prohibición específica para las juezas y jueces, " 1. Manifestar su opinión anticipada en causa que estuvieren juzgando o debieren juzgar"; incurriendo en la falta "gravísima" prevista en el numeral 16 del Art. 109 del citado Código, esto es, "*Revelar información sobre actos investigativos que por su naturaleza puedan favorecer o perjudicar ilegítimamente a una de las partes*".

### 8. REINCIDENCIA DE FALTAS (Art.107,108, 110 del COFJ)

No existe reincidencia sobre las mismas faltas.

### 9. FUNDAMENTOS EN DERECHO PARA EL PRESENTE FALLO

9.1 De conformidad a lo dispuesto en el inciso segundo del Art. 5 de las Normas para el Ejercicio del Control Disciplinario de la Función Judicial, para el Período de Transición, "*El procedimiento administrativo tiene por objeto determinar si se ha producido una conducta considerada como infracción disciplinaria, establecer las circunstancias de tiempo, modo y lugar en que se cometió, la responsabilidad administrativa del investigado y la gravedad para imponer la sanción que corresponda*".

9.2 En el presente caso, las pruebas que obran en el expediente, aportan elementos suficientes que determinan, que el sumariado Dr. Juan Núñez Sanabria, en su calidad de Presidente de la Corte Provincial de Justicia de Sucumbíos, ha incurrido en las prohibiciones establecidas en los Arts. 103 Numeral 11, y 128 Numeral 1 del Código Orgánico de la Función Judicial, manifestando su opinión anticipada en la causa que estaba en su conocimiento y

9

*008-2009-P-CPJS*

debía juzgar, revelando además información sobre actos que se estaban investigando en dicha causa, incurriendo por lo mismo, en la falta gravísima tipificada y sancionada con destitución en el Numeral 16 del Art. 109 del referido cuerpo legal.

**10. RESOLUCIÓN.**

En consecuencia, en mérito de las consideraciones expuestas, **EL PLENO DEL CONSEJO DE LA JUDICATURA**, expide la siguiente Resolución:

*10.1 Aceptar* las denuncias presentadas por el Dr. Adolfo Callejas, Procurador Judicial de la Compañía CHEVRON, y por el Abg. Pablo Fajardo Mendoza.
*10.2 Destituir* al doctor Juan Evangelista Núñez Sanabria, del cargo de Juez de la Corte Provincial de Justicia de Sucumbíos, previniéndole de lo dispuesto en el Art. 238 del Código Penal.
*10.3* Notificar con esta resolución a las partes, a los Directores Nacionales de Personal y Financiero, al Director Provincial de Sucumbíos y al Coordinador de la Unidad de Control Disciplinario para los fines pertinentes.
*10.3* Actúe la secretaría de la Unidad de Control Disciplinario.

Dr. Benjamín Cevallos Solórzano
**PRESIDENTE**

Dr. Hermán Jaramillo Ordóñez
**VOCAL**

Dr. Ulpiano Salazar Ochoa
**VOCAL**

Dr. Homero Tinoco Matamoros
**VOCAL**

Dr. Marco Tulio Cordero Zamora
**VOCAL**

Dr. Oswaldo Domínguez Recalde
**VOCAL**

Dr. Germán Vázquez Galarza
**VOCAL**
**(EN CONTRA)**

Dr. Oscar León Guerrón
**VOCAL**

Dr. Gustavo Donoso Mena
**SECRETARIO ENCARGADO**

Lo que comunico para los fines de ley.-

Dra. Belén Montalvo Bautista