UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: THE REPUBLIC OF ECUADOR,<br><br>Applicant,<br><br>For the Issuance of a Subpoena for the Taking of a Deposition and the Production of Documents in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782.<br>_____/ | No. C-10-80225 MISC CRB (EMC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DIEGO BORJA'S MOTION TO QUASH; AND GRANTING APPLICANT'S MOTION TO JOIN**<br><br>**(Docket Nos. 17, 31)** |

Previously, the Court issued an order granting the Republic of Ecuador's ("ROE") ex parte application for the issuance of a subpoena to Diego Fernando Borja Sanchez. In the order, the Court specifically noted that it was not foreclosing Mr. Borja from contesting the subpoena once issued. Mr. Borja has now filed a motion to quash contesting the subpoena, which seeks both his deposition and the production of documents.

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part Mr. Borja's motion. The Court also **GRANTS** the ROE's motion to join the Attorney General of Ecuador.

### I.  FACTUAL & PROCEDURAL BACKGROUND

This case was initiated when the ROE filed an ex parte application seeking the issuance of a subpoena to Mr. Borja. The request was made pursuant to 28 U.S.C. § 1782, which provides in relevant part as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or

> international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a).

The ROE's proposed subpoena reflected that the ROE seeks both Mr. Borja's testimony as well as the production of documents in his possession, custody, or control. According to the ROE, the information sought is highly relevant to an international arbitration which Chevron Corporation and Texaco Petroleum Company (collectively "Chevron") initiated against the ROE pursuant to a bilateral investment treaty between the ROE and the United States. *See* Docket No. 3 (Bloom Decl., Ex. 19) (notice of arbitration) ("NOA"). In the arbitration, Chevron asserts that the ROE has abused the justice system in connection with lawsuits taking place in the ROE against Chevron, including the *Lago Agrio* lawsuit, in which a group of Ecuadorians assert claims against Chevron for, *inter alia*, violations of an environmental law. *See* Docket No. 3, Ex. 19 (NOA ¶ 4) (alleging, *inter alia*, that the ROE's "judicial branch has conducted the Lago Agrio Litigation in total disregard of Ecuadorian law, international standards of fairness, and Chevron's basic due process and natural justice rights, and in apparent coordination with the executive branch and the Lago Agrio plaintiffs"); *see also In re Chevron Corp.*, No. M-19-111, 2010 U.S. Dist. LEXIS 47034, at *5-6, 10-11 (S.D.N.Y. May 10, 2010).

On September 15, 2010, the Court issued an order granting the ROE's ex parte application. *See* Docket No. 9 (order). In the order, the Court noted that it was not precluding Mr. Borja from contesting the subpoena. *See id.* (Order at 8). Thereafter, Mr. Borja filed the currently pending motion to quash the subpoena. A hearing on the motion was held on November 10, 2010. At the hearing, the ROE offered to add the Attorney General of Ecuador -- known as the Procurador -- as an applicant for the subpoena. Thereafter, the ROE formally moved to join the Procurador as an applicant.

///

///

2

## II. DISCUSSION

In his motion to quash, Mr. Borja makes three arguments. First, he contends that the Court was not authorized to issue the subpoena pursuant to 28 U.S.C. § 1782 because that statute allows only for applications for assistance to be made by an "interested person," and the ROE, as a sovereign, is not a "person." Second, he argues that the discovery sought is irrelevant to the international arbitration involving the ROE and Chevron. According to Mr. Borja, the discovery is actually being requested for other improper purposes – namely, for use in the *Lago Agrio* litigation and for furtherance of the ROE's investigations of Mr. Borja and his wife. Finally, Mr. Borja contends that, because the discovery is irrelevant and is actually being requested for other improper purposes (*e.g.*, harassment), the Court should exercise its discretion to quash the subpoena. These arguments are addressed below.

A. "Interested Person"

As noted above, the ROE's request for issuance of a subpoena to Mr. Borja was made pursuant to 28 U.S.C. § 1782. Under § 1782, a court may permit discovery "upon the application of any interested person." 28 U.S.C. § 1782(a). According to Mr. Borja, the ROE – as a sovereign – cannot be a "person."

The Court rejects Mr. Borja's position. It is true that there is a "longstanding interpretive presumption that 'person' does not include [a] sovereign." *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 780 (2000). However, the presumption is not a "'hard and fast rule of exclusion.'" *Id.* at 781. "The purpose, the subject matter, the context, the legislative history, and the executive interpretation of the statute are aids to construction which may indicate an intent, by the use of the term [person], to bring state or nation within the scope of the law."[1] *United States v. Cooper Corp.*, 312 U.S. 600, 605 (1941); *see also International Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 83 (1991) (noting the same).

---

[1] This interpretive presumption is consistent with the Dictionary Act, which provides that "the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals" "*unless* the context indicates otherwise." 1 U.S.C. § 1 (emphasis added).

1. Legislative History

The legislative history of § 1782 is particularly instructive. As discussed by the Sixth Circuit in *In re Letter Rogatory from the Justice Court, District of Montreal, Canada*, 523 F.2d 562, 564 (6th Cir. 1975) [hereinafter *Montreal*], the predecessor statutes to § 1782 provided for federal-court assistance for courts in other countries in suits in which the government of the foreign country was a party or otherwise had an interest. *See id.* at 564-65 & n.5 (discussing legislation in, *inter alia*, 1863, 1877, and 1878). The 1863 predecessor statute explicitly stated such:

> An Act to facilitate the taking of Depositions within the United States, to be used in the Courts of other Countries, and for other Purposes.
>
> Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the testimony of any witness residing within the United States, to be used in any suit for the recovery of money or property depending in any court in any foreign country with which the United States are at peace, *and in which the government of such foreign country shall be a party or shall have an interest*, may be obtained, to be used in such suit.

*Id.* at 566-67 (providing text for 1863 legislation) (emphasis added). So too did the 1878 legislation. *See id.* at 568 (providing text for 1868 legislation). Given that judicial assistance was available in a suit where a foreign government was a party or had an interest, it is clear that from the outset Congress intended a foreign government, in such a suit, be able to request judicial assistance. *See id.* at 565 n.5 (stating that "the 1863 legislation extended to requests made by foreign governments").

In 1948, the various statutes related to judicial assistance for courts in other countries were revised and consolidated at 28 U.S.C. § 1781 *et seq. See id.* at 565 n.5. While § 1782, as formally enacted in 1948, no longer contained the explicit language of the 1863 and 1878 predecessor statutes,[2] there is nothing to indicate that the amendment was meant to bar requests for judicial assistance in suits in which a foreign government was a party. Indeed, when § 1782 was later

---

[2] As enacted in 1948, § 1782 provided in relevant part that "[t]he deposition of any witness residing within the United States to be used in any civil action pending in any court in a foreign country with which the United States is at peace may be taken before a person authorized to administer oaths designated by the district court of any district where the witness resides or may be found." *Montreal*, 523 F.2d at 568 (providing text for 1948 version of § 1782).

4

amended in 1964, it is clear that Congress was moving to expand the scope of the statute rather than restrict it. *See id.* at 565 (taking note of "ever-expanding reach of our laws on the subject"); *see also In re Request for Assistance from Ministry of Legal Affairs*, 848 F.2d 1151, 1153-54 (11th Cir. 1988) (discussing 1964 amendments which broadened § 1782's ability to provide assistance in multiple ways), *overruled on other grounds by Intel*, 542 U.S. at 253-54 & n.7.

      One of the 1964 amendments to § 1782 added the "interested person" provision. This amendment was designed to *broaden*, not narrow, the scope of those who could seek judicial assistance – *i.e.*, not just a foreign government. *See id.* at 1154 (noting that "the 1964 amendments allowed, for the first time, an 'interested person' as well as a foreign tribunal to request judicial assistance"). That the amendment was not intended to curtail the ability of a foreign government to seek judicial assistance – particularly in a suit in which it was a party – is supported by the legislative history, which broadly specified that an "'interested person' can be a 'person designated by or under a foreign law, *or a party to the foreign or international litigation*.'" *Id.* at 1154 (quoting 1964 U.S. Code Cong. & Admin. News at 3789) (emphasis in original). *Cf. Intel*, 542 U.S. at 256 (stating that there was "[n]o doubt [that] litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782"). Mr. Borja cites no legislative history indicative of the contrary.

    2.    <u>Context</u>

      In spite of the legislative history described above, Mr. Borja asserts that a sovereign such as the ROE cannot be "any interested person" under § 1782. The main authority on which Mr. Borja relies is *Fayed v. CIA*, 229 F.3d 272 (D.C. Cir. 2000) which held the federal government was not a "person" subject to discovery under § 1782. *Fayed*, however, is of limited value because it did not address the precise question here – *i.e.*, whether a sovereign can be an "interested person" under § 1782 that can make a request for judicial assistance. Rather, *Fayed* addressed the converse issue of whether a sovereign can be a "person [who] resides or is found" in the district such that it can be *subjected* to discovery. Notably, the *Fayed* court went out of its way to note that it was interpreting "person" "as used to define those subject to discovery, *not* those seeking discovery." *Id.* at 273

5

(emphasis in original); *see also id.* at 274 (noting that "[n]o court has yet resolved whether the 'person[s]' *subject to subpoena* in § 1782 include the federal government") (emphasis added).

Mr. Borja argues that, even so, the *Fayed* court's interpretation of "person," as used in the first part of § 1782 to describe who is subject to discovery, provides guidance in interpreting "any interested person," as used in the second part of the statute to describe who can initiate discovery. He relies on the canon of construction that the same word – *i.e.*, "person" – must have the same meaning when used in the same statute. *Cf. Firestone v. Howerton*, 671 F.2d 317, 320 n.6 (9th Cir. 1982) (stating that, "when the same terms are used in different sections of a statute, they receive the same meaning"). But Mr. Borja glosses over the fact that the Court is not considering the term "person" in isolation but rather the phrase "any interested person." While "person" may have one meaning, "any interested person" is a phrase which may have a different meaning.

Moreover, even if the Court were to look at the word "person" in isolation (and divorced from the complete phrase), the context cannot be ignored. *See Cooper*, 312 U.S. at 605 (noting that context is an aid to construction which "which may indicate an intent, by the use of the term [person], to bring state or nation within the scope of the law"). In *Fayed*, the court's holding that a government is not a person subject to discovery was informed in large part by sovereign immunity concerns. *See Fayed*, 229 F.3d at 274-75. Similarly, some of the other cases cited by Mr. Borja also implicate sovereign immunity because, *e.g.*, the issue was whether a government may be subjected to liability. *See Vermont Agency*, 529 U.S. at 780-81 (addressing whether "a State (or state agency) is . . . a 'person' subject to qui tam liability under the FCA"). Here, however, sovereign immunity is not an issue. The ROE is not being compelled to do anything; rather, the ROE seeks the right to initiate action.

Although Mr. Borja has cited some cases in which the court construed the word "person" as not including a sovereign even where sovereign immunity was not a concern, those cases are distinguishable because the statutory construction turned on the specific context of the statute at issue. For example, in *Cooper*, 312 U.S. at 600, the question for the Supreme Court was "whether, by the use of the phrase 'any person' [in § 7 of the Sherman Act], Congress intended to confer upon the United States the right to maintain an action for treble damages against a violator of the Act."

*Id.* at 604. The Court concluded it did not largely because of the specific context of the particular statute at issue. The Court took into account not only the unlikelihood that Congress would use "the term 'person' in different senses in the same sentence" but also the fact that "the concluding words of the section give the injured party, as part of his costs, a reasonable attorney's fee, – a provision more appropriate for a private litigant than for the United States." *Id.* at 606. The Supreme Court also took note that other provisions of the Sherman Act imposed criminal liability on "person[s]" and therefore "it is obvious that while the term 'person' may well include a corporation it cannot embrace the United States." *Id.* at 607.

Similarly, in *Inyo County v. Paiute-Shoshone Indians of the Bishop Community of the Bishop Colony*, 538 U.S. 701 (2003), the Supreme Court's conclusion that a Native American tribe was not a "person" entitled to sue under 42 U.S.C. § 1983 was guided by context, or at least the purpose of the statute. *See Cooper*, 312 U.S. at 605 (noting that, *inter alia*, the purpose and context of a statute are "aids to construction which may indicate an intent, by the use of the term [person], to bring state or nation within the scope of the law"). The Court emphasized that "[s]ection 1983 was designed to secure private rights against government encroachment, not to advance a sovereign's prerogative to withhold evidence relevant to a criminal investigation." *Inyo*, 538 U.S. at 711-12.

The context of the statutory language must be considered. In the instant case, Mr. Borja has failed to cite any contextual basis supporting his formalistic interpretation of § 1782.

3.  Interpretive Case Law

At the hearing, Mr. Borja conceded that a governmental official acting on behalf of the ROE could make the request for assistance under § 1782 if that official were properly endowed with the authority under the laws of the ROE. *See, e.g.*, *Young v. United States Dep't of Justice*, No. 87 Civ. 8307 (JFK), 1988 U.S. Dist. LEXIS 13111, at *18-19 (S.D.N.Y. Nov. 28, 1988) (concluding that the Attorney General of Bermuda was an interested person because he was empowered to institute criminal proceedings in Bermuda and the discovery sought was "essential to an investigation into alleged violations of Bermuda's Exchange Control Regulations"). Indeed, Mr. Borja does not take issue with the many cases that have afforded assistance to foreign governments under § 1782 where the request was made by a government official acting on behalf of the sovereign. *See, e.g.*, *In re*

*Letter of Request From Crown Prosecution Serv.*, 870 F.2d 686, 690 (D.C. Cir. 1989) (stating that "courts have repeatedly held" that "[a] foreign legal affairs ministry, attorney general, or other prosecutor . . . fits squarely within the section 1782 'interested person' category"). Nor does Mr. Borja contest that there is an individual official within the ROE who has the authority to speak on behalf of the ROE with respect to the discovery sought here.

When asked to discern the logic of permitting an authorized official to seek assistance under § 1782 but denying the sovereign itself in its own name to do the same, Mr. Borja's only response was that the cases require an analysis of whether the official was properly vested with authority so as to be an "interested person." *See Young*, 1988 U.S. Dist. LEXIS 13111, at *18-19. But that concern is obviated where the sovereign itself initiates the request. Simply put, there is no question of agency or authority where the sovereign acts on its own. Moreover, case law addressing sovereign immunity under, *e.g.*, the Eleventh Amendment, establishes that a government official acting in his or her official capacity is indistinguishable for all intents and purposes from the sovereign. *See, e.g.*, *Holley v. California Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010) (stating that, "[f]or sovereign-immunity purposes, we treat [plaintiff's] suit against state officials in their official capacities as a suit against the state"). Hence, given Mr. Borja's concession (consistent with the case law) that an official with authority may seek assistance under § 1782 on the sovereign's behalf, it makes no logical sense to hold the sovereign may not do so on its own behalf.

4. <u>Underlying Policy</u>

The underlying policy of § 1782 also supports the conclusion that a foreign government may initiate discovery thereunder. One of the purposes of the statute is to encourage reciprocity by foreign governments. *See Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) (stating that "the twin aims of [§ 1782 are] providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts") (internal quotation marks omitted); *see also John Deere Ltd v. Sperry Corp.*, 754 F.2d 132, 135 (3d Cir. 1985) (noting that the statute "is largely exemplary and aspirational, an attempt to stimulate reciprocity"). Here, it is undisputed that Chevron, a party to the international arbitration that it initiated against the ROE, has utilized § 1782

to obtain discovery from witnesses located in the United States. Yet Mr. Borja argues that the opposing party in the arbitration – the ROE – must as a formal matter be denied the same right. The asymmetrical result prejudicial to foreign governments is hardly conducive to encouraging cooperation and reciprocal treatment of the United States in the international arena – a result at odds with one of Congress's purposes in enacting § 1782.

5. Summary

In sum, contrary to what Mr. Borja argues, the ROE does qualify, in the instant case, as an "interested person" for purposes of § 1782.

B. Joinder

The Court notes that, even if the ROE were not an "interested person" under § 1782, the ROE has now moved to add the Procurador as an applicant for the subpoena. In his opposition to the motion for joinder, Mr. Borja does not dispute that the Procurador is a "person" under the statute. Clearly, the Procurador is a natural person. And the ROE has offered evidence that the Procurador is responsible for defending the ROE in the international arbitration and therefore is "interested." *See* Docket No. 17 (Mot., Ex. 1) (Codification of the Organic Law of the State Attorney General, art. 2) (providing that the Attorney General "is charged with the judicial defense of the State"). Mr. Borja's main argument in his opposition is that the Procurador's involvement supports his contention that the discovery is being sought for improper purposes. But that issue is different from the issue as to who has the authority to seek discovery. The Court therefore concludes that, even if the ROE were not an "interested person," the Procurador is. There being no basis to deny the motion, the Court grants to ROE's motion to join the Procurador.

C. Relevance and/or Improper Purposes

Having concluded that either the ROE or the Procurador is an "interested person" who may make a request for judicial assistance, the Court turns to the question of whether the discovery requested is relevant to the arbitration at issue and/or is being sought for an improper purpose. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004) (describing discretionary factors for a court to consider in determining whether to grant a request for judicial assistance under § 1782); *see also Chevron*, 2010 U.S. Dist. LEXIS 47034, at *16 (noting that one such factor is

1 "whether the subpoena contains unduly intrusive or burdensome requests"). In assessing this issue, the Court is guided by the applicable standards found in the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 1782 (providing that, "[t]o the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure").

The Court rejects the overarching arguments made by Mr. Borja on both counts. There is little doubt that the discovery requested is, as a general matter, relevant to the international arbitration. As noted above, one of the issues in the arbitration is whether Chevron has, in essence, been deprived of due process in the *Lago Agrio* litigation. According to Chevron, Judge Nunez, the judge who formerly presided over the *Lago Agrio* lawsuit,[3] was biased against it. In support of this claim, Chevron has pointed to, *inter alia*, meetings which involved Mr. Borja and which Mr. Borja recorded. As reflected in its notice of arbitration for the international arbitration, Chevron alleges as follows:

> ZZ. Judge Nunez has made statements to third parties, unrelated to the Lago Agrio Litigation, indicating a pre-disposition of the outcome of the case. In April 2009, two individuals pursuing business opportunities in Ecuador – an Ecuadorian named Diego Borja and a U.S. citizen named Wayne Hansen – were invited to meet with Judge Nunez in connection with potential remediation projects to be funded with the proceeds of a judgment against Chevron. Two meetings were arranged between Messrs. Borja and Hansen and Judge Nunez. During these meetings, while the Lago Agrio Litigation was still in its evidentiary phase and additional filings by the parties were still to be made, Judge Nunez was recorded stating that he would issue a ruling in late 2009 finding Chevron liable and that the appeals would be a formality.
>
> AAA. Messrs. Borja and Hansen also were invited to meet in the offices of Ecuador's ruling Alianza PAIS party with persons including Patricio Garcia, who identified himself as a political coordinator for the party. Mr. Garcia was recorded stating that the remediation contracts would be awarded in exchange for a bribe which was to be divided between Judge Nunez, the office of the Presidency of Ecuador and the Lago Agrio plaintiffs. Mr. Garcia also stated that the legal advisor of the Ecuadorian President's office, Alexis Mera, had given instructions as to

---

[3] In late October 2010, the ROE's Judiciary Council removed Judge Nunez from the position of Judge of the Provincial Court of Justice of Sucumbios. *See* Anderson Supp. Reply Decl., Ex. A (decision of Judiciary Council).

> how the proceeds of the supposed Lago Agrio judgment against Chevron were to be routed, and that the executive branch was involved in drafting Judge Nunez's decision.

Docket No. 3 (Bloom Decl., Ex. 19) (NOA ¶¶ 52-53); *see also* Docket No. 25 (Bloom Decl., Ex. 6) (Chevron's Merits Memorial ¶ 14) (claiming there is videotape evidence of Judge Nunez being bribed).

    To the extent Mr. Borja contends that the discovery sought is irrelevant because only 3 of the 76 paragraphs in Chevron's notice of arbitration refer to Mr. Borja's recordings, that argument is not persuasive. Even if the recordings were only a small piece of the arbitration (and arguably that is not the case given the explosive nature of the allegations, *see* Docket No. 23 (Opp'n at 14-15) (noting Chevron's reliance on the recordings in its Merits Memorial)), that does not mean that it is irrelevant. Certainly, under standard set forth in the Federal Rules of Civil Procedure, there is sufficient relevance to permit discovery.

    As for Mr. Borja's contention that, based on the notice of arbitration, the only relevant discovery is his recordings – which the ROE already has – that argument also lacks merit. It is reasonable that the ROE would want to explore topics such as what led to the recordings, the contents of conversations occurring before and after the taped discussions which were not recorded, and whether or not Mr. Borja is biased in favor of or coordinated efforts with Chevron. The nature and meaning of the discussions recorded by the video and transcripts thereof (which this Court has reviewed) are not entirely self-evident, especially with regard to Chevron's bribery allegation. An evaluation of the merits of Chevron's claims requires additional interpretative inferences and context. It is not at all clear that the recordings tell 100% of the story. Tellingly, Mr. Borja allegedly had a conversation with an associate in which he stated that the recordings showed only 30% of the story. *See* Docket No. 23 (Opp'n at 15) (citing Docket No. 3 (Bloom Decl., Ex. 48) (Tr. at 8)). Thus, Mr. Borja could offer testimony about evidence not contained in the video to provide context. Moreover, his credibility is likely to be at issue. The fact that Chevron has not yet relied on Mr. Borja's declarations from 2009, *see* Anderson Decl., Exs. A-B (Borja declarations), does not mean that the ROE should therefore be barred from taking his deposition. Chevron has not

1 committed to not call Mr. Borja as a witness. Moreover, it is possible that the ROE after taking Mr.
2 Borja's deposition could decide to call him as a witness.

3 As for Mr. Borja's contention that the discovery being sought is more relevant to the *Lago
4 Agrio* litigation,[4] that may be true. However, that is not a reason to bar discovery here so long as the
5 discovery is relevant to the international arbitration between Chevron and the ROE. The ROE
6 persuasively argues that, given the allegations made by Chevron, the *Lago Agrio* litigation is
7 relevant to the international arbitration. As the ROE points out, Chevron's NOA asserts that it was
8 denied due process as a result of the corruption and collusion between the judiciary and the *Lago
9 Agrio* plaintiffs, and thus Chevron's claim for damages encompass the question of what the outcome
10 of that litigation would have been had Chevron been given a fair trial on the merits. *See* Docket No.
11 3, Ex. 19 (NOA ¶¶ 4 (asserting collusion), 76(1) (seeking declaration that Chevron has no liability or
12 responsibility for environmental impact), 76(3) (seeking order releasing Chevron from
13 environmental liability in the *Lago Agrio* litigation), 76(5)-(6) (seeking indemnification from ROE
14 of all damages awarded in the *Lago Agrio* litigation and all damages caused to Chevron). Thus the
15 *Lago Agrio* litigation presents a "case within the case," making its merits relevant to the arbitration.

16 Mr. Borja further argues that the discovery sought is for an improper purpose – *i.e.*, it is part
17 of the ROE's efforts to further its criminal investigations of him and/or his wife and to harass him.
18 Mr. Borja notes that the Procurador appears to have had a role initiating the criminal investigations.
19 *See* Docket No. 35 (Opp'n, Ex. A). The problem for Mr. Borja is that, even though the discovery
20 may be relevant to the criminal investigations, the discovery is substantially relevant to the
21 international arbitration as well. Furthermore, it was Chevron who initiated the international
22 arbitration, not the ROE. That the ROE seeks to defend itself by gathering relevant evidence
23 diminishes the likelihood that the proposed discovery is simply a tool for harassment. Given this
24 context, Mr. Borja has not made a sufficient showing of a deliberate campaign of harassment to
25 warrant barring the discovery of relevant information sought by the ROE herein.

---

[4] In his opposition to the ROE's motion to join, Mr. Borja asserts that there have been communications between the Procurador (or his counsel) and the *Lago Agrio* plaintiffs. *See* Docket No. 35 (Opp'n at 3-4).

With respect to the specific document requests challenged by Mr. Borja, the Court grants the discovery requested, subject to the following:

- *Discovery related to Mr. Borja's wife.* The discovery is relevant because, if Mr. Borja's wife has had a longstanding relationship with Chevron, that may account for a bias on the part of Mr. Borja in favor of Chevron. The discovery, however, extends only to documents within Mr. Borja's possession, custody, or control. *See* 28 U.S.C. § 1782(a) (providing that, "[t]o the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure"). Moreover, the Court's ruling here does not necessarily bar Mr. Borja's wife from challenging the discovery sought to the extent she has independent concerns.
- *Mr. Borja's passport.* The Court shall not enforce this discovery request because it has at best marginal probative value and intrudes deeply into Mr. Borja's privacy. In its opposition, the ROE argues that the "passport is relevant to determine the dates [Mr. Borja] traveled between Ecuador and the United States with the knowledge of or at the direction of Chevron." Docket No. 23 (Opp'n at 18). While the passport would show dates of travel, within a more specific showing, any connection with Chevron would appear tenuous and could sweep in travel that has nothing to do with Chevron.
- *Discovery related to other companies incorporated by Mr. Borja.* The discovery has some relevance. As reflected by the above, Mr. Borja allegedly met with Judge Nunez in connection with potential remediation projects related to the *Lago Agrio* litigation. Mr. Borja's experience therefore is an issue. So is potential involvement with Chevron through any such activities. However, as phrased, the discovery request is overbroad. *See* Subpoena RFP No. 18 (asking for "[a]ll documents referring or relating to companies you, directly or indirectly, incorporated in Ecuador or elsewhere during the last ten years"). At this juncture, the Court shall require only (1) production of documents sufficient to identify companies incorporated by Mr. Borja over the last ten years; (2) documents establishing their creation or acquisition by Mr. Borja; and (3) any correspondence or communications between any

such entities and Chevron (including Texaco) and any affiliates thereof. This ruling does not preclude the ROE from seeking further discovery about the companies, if necessary.

- *Documents related to inspections and testing conducted in connection with* Lago Agrio *litigation.* As discussed above, one of the main claims being made by Chevron in the international arbitration is that it has been treated unfairly during the *Lago Agrio* litigation. As one example, Chevron has argued in the arbitration that the *Lago Agrio* plaintiffs' inspections and testing are permeated with fraud and that Chevron's own inspections and testing showed no contamination that was a threat to the environment. *See* Docket No. 25 (Bloom Decl., Ex. 6) (Chevron's Merits Memorial ¶¶ 190-98). Given this position taken by Chevron, the discovery at issue does have relevance to the arbitration – even if it also has direct relevance to the *Lago Agrio* lawsuit itself.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Mr. Borja's motion to quash. The ROE is an "interested person" who may seek discovery from Mr. Borja. The ROE's subpoena is appropriate with the limited exceptions discussed above. The Court also **GRANTS** the ROE's motion for joinder.

This order disposes of Docket Nos. 17 and 31.

IT IS SO ORDERED.

Dated: December 1, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge